HOLLIFIELD *v.* BIRD & SON, INC.

5-1239                                            301 S. W. 2d 27

Opinion delivered April 15, 1957.

[Rehearing denied May 13, 1957]

*J. Fred Jones,* for appellant.

*Riddick Riffel,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellee, Bird & Son, Inc., operates a slate crushing mill and

roofing granules processing plant near Glenwood, Arkansas. Appellant, Luther Hollifield, was 40 years old and a strong, vigorous and apparently healthy individual when he started working for appellee. He worked at the plant at four different periods: February 1, 1944, to September 25, 1944; January 22, 1948 to December 21, 1948; May 27, 1949 to September 1, 1949; and February 14, 1951 to May 4, 1952.

During his entire employment at appellee's plant the appellant was exposed to varying amounts of slate dust in the air containing from 24.10% to 44.27% free silica according to one analysis and from 32.35% to 41.27% according to another analysis. During most of the employment appellant worked either as a millright or a carpenter. On or about January 1, 1952, it became a part of appellant's duties as an "extra man" to spend about two hours each day in an unventilated steel tank where very fine slate dust poured from a conveyor through a hole in the top of the tank. He was required to shovel and distribute the dust to the four corners of the tank until it was filled. The air would become so hot and heavy with the fine dust that he could not endure the conditions more than three to five minutes at a time and would have to leave the tank to gather his breath. It was also a part of appellant's duties to sweep out boxcars containing various grain and chemical dusts. Appellant continued to do this type work during the last four months of his employment when he developed a severe cough, was unable to breathe without sitting up at night, and became exhausted on slight exertion. He was forced to quit work on May 4, 1952, and, so far as the record discloses, has been unable to do any kind of work requiring strenuous physical activity since that date.

Appellant filed a claim with the Arkansas Workmen's Compensation Commission contending he was totally disabled because of pulmonary emphysema which was either caused or aggravated to its disabling status by inhalation of the dust to which he was exposed in his employment by appellee, Bird & Son, Inc. After numer-

ous tests and examinations by various doctors and three extensive hearings before three single commissioners an order and opinion were entered on March 3, 1955 by Commission Chairman Bayard Taylor, who conducted the last hearing, in which it was found: ''That the concentrations of dust in which claimant was required to work constituted an unusual working condition and one of a hazardous nature from which claimant sustained an accidental injury resulting in disability.'' Appellee and its insurance carrier were directed to pay reasonable medical expenses incurred by appellant and compensation at the rate of $25.00 per week beginning May 5, 1952, and continuing under the terms and provisions of the Arkansas Workmen's Compensation Law.

Appellee requested and was granted a review of Commissioner Taylor's order by the full Commission. In the meantime the appellant was hospitalized and a new series of medical examinations was begun and conducted by six specialists, three being selected by each party. Examinations or reports were made by these and other doctors in and out of Arkansas. After two hearings before the full Commission on September 6, 1955, and September 22, 1955, an opinion was entered on February 24, 1956, finding: ''That between January 1952 and April 1952, claimant sustained an accidental injury that arose out of and during the course of his employment with Bird & Son, Inc., said accident being an over-exposure to heavy concentrations of dust that resulted in a temporary aggravation of claimant's pulmonary symptoms.

''That as a result of claimant's accidental injury he was temporarily totally disabled from May 5, 1952 to September 25, 1952, inclusive, and on the latter date claimant's disabilities resulting from said exposure to dust terminated without residual disability.'' The Commission found there was no serious conflict in the medical evidence to the effect that the heavy concentrations of dust to which appellant was exposed constituted an accidental injury that arose out of and in the course of his employment and ''aggravated his pulmonary symptoms'' to the point of disability. However, it concluded

that the additional evidence required it to modify and amend the opinion by Commissioner Taylor rendered March 3, 1955, to the extent that September 25, 1952, represented the termination period of such temporary total disability.

While the numerous doctors variously described the condition suffered by appellant, the medical evidence is overwhelming to the effect that he had pulmonary emphysema, the symptoms of which became apparent during the last four months of his employment. There is no appeal from the Commission's finding that appellant suffered a compensable accidental injury by reason of employment conditions which aggravated the emphysema, or its symptoms, to the point of disability. However the appellant prosecuted an appeal to the Montgomery Circuit Court from that part of the order which found that his disability resulting from the exposure to dust terminated without residual disability on September 25, 1952. The circuit court affirmed the order of the Commission.

The sole issue is the sufficiency of the evidence to support the Commission's finding that appellant's work connected disabilities terminated on September 25, 1952, without residual disability. This question must be determined under the established rule that the findings of fact made by the Commission are entitled to the same force and effect as a jury verdict and will not be disturbed on appeal if supported by substantial evidence. *J. L. Williams & Son* v. *Smith,* 205 Ark. 604, 170 S. W. 2d 82. But the sufficiency of the testimony to support the Commission's finding is a question of law which this court will review on appeal. *Bales, Administratrix* v. *Service Club No. 1, Camp Chaffee,* 208 Ark. 692, 187 S. W. 2d 321.

The "additional evidence" upon which the Commission based its finding that appellant's disabilities from dust exposure terminated on September 25, 1952, consisted of the reports or testimony of the several doctors selected by the parties. This testimony followed much the same pattern as that adduced in the recent case of

*Boyd Excelsior Fuel Co.* v. *McKown,* 226 Ark. 174, 288 S. W. 2d 614. In addition to the reports and testimony of the Arkansas doctors certain portions of the hearing transcripts together with X-ray films and other exhibits were sent by the insurance carrier to Dr. O. A. Sander at Milwaukee, Wisconsin. In his letter report to the carrier in reply, Dr. Sander, as in the *McKown* case, *supra,* found there was little, if anything, wrong with the claimant and based his definite opinion to that effect upon his examination of reports and transcripts of evidence which reflected facts directly to the contrary. However he did suggest that any bronchial irritation suffered by appellant might very well be attributed to his smoking habits. His further recommendation that such habits be considered was purportedly based on "the transcripts" which clearly revealed that appellant had never used tobacco in any form. As we pointed out in the *McKown* case, such reports hardly amount to substantial evidence.

Appellee candidly concedes that no witness testified that appellant's disability caused by the dust aggravation terminated on September 25, 1952; and that the record reveals no circumstances, such as a return to gainful employment, which would indicate this date as being the date of termination of his disability. But appellee points to the testimony of Dr. Fred Gray to the effect that appellant did not have any signs of bronchial irritation when he examined him on February 24, 1954, and that a dust irritation should clear up in a matter of days or weeks. Aside from the fact that appellant's condition on February 24, 1954, would scarcely prove a termination of his disability on September 25, 1952, it is difficult to reconcile the doctor's opinion with his further testimony that appellant was quite obviously short of breath and fell far below normal in his ability to expire air at the time of the examination. It was upon the basis of these and other symptoms that Dr. Gray at that time made a diagnosis of "pulmonary emphysema, far advanced".

In order to sustain the finding of the commission, reference is also made to a letter from Dr. Harvey Shipp

to Dr. W. J. Jones dated November 11, 1952, regarding an examination of appellant by Dr. Shipp on September 24, 1952, in which he found "no obstructive lesion in any of the bronchial orifices", and that, "the mucosa itself was relatively normal in appearance and shows complete recovery from inhalation of dust." This letter was introduced at the hearing before Commissioner Taylor and was not a part of the "additional evidence" upon which the full Commission based its determination that appellant's disability terminated in September, 1952. It should also be noted that in the same letter Dr. Shipp stated he was unable to explain appellant's "dyspnea on exertion" and recommended that "he continue on an expectorant cough syrup".

Under the undisputed medical testimony the appellant developed well known and definite symptoms of pulmonary emphysema such as irritation of the bronchial tubes, a severe cough, shortness of breath and easy fatigue on slight exertion as a result of his exposure to the silica dust in the course of his employment. Even if it could be said there was substantial evidence to support a finding that the bronchial irritation had cleared up on September 25, 1952, there is no evidence that appellant's shortness of breath or easy fatigue on the slightest exertion has improved since his removal from the dust. Dr. John E. Greutter, one of the doctors selected by appellee, testified before the full Commission that appellant was still disabled from performing any work demanding exertion or strenuous activity and there was no substantial evidence to the contrary.

We conclude that the Commission's finding that appellant's temporary total disability terminated on September 25, 1952, is without substantial evidence to support it. The judgment of the circuit court is accordingly reversed and the cause remanded with directions to remand the case to the Commission with directions that appellee and its insurance carrier pay appellant compensation from May 4, 1952, to February 24, 1956, and continue such payments thereafter within the limits of

the compensation act as long as appellant is disabled together with reasonable medical treatment for appellant within said limits.

Justice GEORGE ROSE SMITH dissents.